UNITED STATES DISTRICT COURT **07** **CV** **5939**

SOUTHERN DISTRICT OF NEW YORK

---

PATRICIA IRBY (on behalf of the minor
children of Stephen S. Helvenston, deceased);
and JUNE BATALONA (Widow of Wesley
Batalona)

                Petitioners,

    - against -

BLACKWATER SECURITY CONSULTING,
LLC; FIDELITY & CASUALTY COMPANY
OF NEW YORK/CNA INTERNATIONAL; and
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

                Respondents.

Case No.:

JUN 2 2 2007

U.S. _ _ _ S D N Y
CASHIERS

**PETITION FOR REVIEW**

---

    Claimants/Petitioners PATRICIA IRBY, on behalf of the minor children of Stephen S.

Helvenston, deceased, and JUNE BATALONA, widow of Wesley Batalona, hereby petition the

United States District Court for the Southern District of New York for review of the Order from

the Benefits Review Board of the U.S. Department of Labor, dated April 25, 2007, which is

double captioned as a consolidated appeal entitled: *Patricia Irby (on behalf of the minor children*

*of Stephen S. Helvenston, deceased), v. Blackwater Security Consulting, LLC, and Fidelity and*

*Casualty Company of New York/CNA International, Director, Office of Workers' Compensation*

*Programs, United States Department of Labor* (BRB Nos. 06-0655 and 06-0655A), and *June*

*Batalona (Widow of Wesley Batalona) v. Blackwater Security Consulting, LLC, and Fidelity and*

1

*Casualty Company of New York/CNA International, Director, Office of Workers' Compensation Programs, United States Department of Labor* (BRB Nos. 06-0656 and 06-0656A), concerning the Petitioners' claims under the Defense Base Act (42 U.S.C. § 1651, *et seq.*). A copy of the appealed Order is attached hereto as Exhibit "A".

## PARTIES

1.  Claimant/Petitioner Patricia Irby is an individual residing in the state of Virginia.

2.  Claimant/Petitioner June Batalona is an individual residing in the state of Hawaii.

3.  Petitioners are informed and believe and thereon allege that Respondent Blackwater Security Consulting, LLC, is a limited liability corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business in Moyock, North Carolina.

4.  Petitioners are informed and believe and thereon allege that Respondent Fidelity & Casualty Company of New York/CNA International is a limited liability corporation duly organized and existing under the laws of the state of Illinois, with its principal place of business in Chicago, Illinois.

5.  Petitioners are informed and believe and thereon allege that Respondent Director, Office of Workers' Compensation Programs, United States Department of Labor is the director of the administrative agency from which the Order that is the subject of this Petition for Review was issued.

2

## JURISDICTION AND VENUE

6.      Pursuant to 42 U.S.C. § 1653(b), judicial review of decisions by the Benefits

Review Board concerning issues under the Defense Base Act (42 U.S.C. § 1651, *et seq.*) shall be

instituted in the United States District Court of the judicial district where the District Director is

located. Here, the District Director assigned to these claims is located within the Southern

District of New York.

## BRIEF FACTUAL STATEMENT

7.      On March 31, 2004, four private American security contractors were killed,

burned, beaten, dragged through the streets of Fallujah, Iraq, and strung up from a bridge over the

Euphrates River. One of the security contractors was Stephen S. Helvenston ("Helvenston"), the

father of two minor children. Another security contractor was Wesley J.K. Batalona

("Batalona"), the husband of June Batalona.

8.      Helvenston and Batalona were working for Blackwater Security Consulting, LLC

("Blackwater" or "Employer") at the time of their deaths. Shortly after the deaths, Blackwater's

insurance carrier, Fidelity & Casualty Company of New York/CNA International ("CNA" or

"Carrier"), began voluntarily paying benefits under the Defense Base Act ("DBA") (42 U.S.C. §

1651, *et seq.*).

9.      It was later discovered that the deaths of Helvenston, Batalona and the other two

Blackwater contractors not a part of this particular case were not simply the result of an enemy

attack, but instead were proximately caused by the intentional wrongful conduct of Blackwater.

10.     As such, on January 5, 2005, the estates of the four men filed a civil lawsuit in

3

North Carolina state court for wrongful death and fraud. The lawsuit explains how Blackwater

lured the men into its employment through material misrepresentations, such as:

    a.    Each security mission would be handled by a team of no less than six (6) members.

    b.    Each security mission would be performed in armored vehicles.

    c.    These security teams would be comprised of at least two armored vehicles, with at least three security contractors in each vehicle, which would provide for a driver, a navigator, and a rear-gunner.

    d.    The rear-gunner would have a heavy automatic weapon, such as a "SAW Mach 46," which could fire up to 850 rounds per minute, allowing the gunner to fight off any attacks from the rear.

    e.    They would be given at least 24-hours notice prior to any security mission.

    f.    Each security detail mission would be subject to a Risk Assessment completed prior to the mission, and that if the threat level was too high, they would have the option of not performing the mission.

    g.    They would be afforded the opportunity to review the travel routes, gather intelligence about each mission, do a pre-trip inspection of the route and determine the proper logistics to carry out the security detail.

    h.    They would arrive in the Middle East and have at least 21 days prior to any operations to become acclimated to the area, learn the lay of the land, gather intelligence, and learn safe routes through the area.

    11.    Unfortunately, the men were <u>not</u> provided with any of these tools, protections, or

information to perform their jobs for Blackwater. Instead, they were sent out on a mission

without conducting a pre-trip inspection of the route, without being able to gather intelligence

about the area, without conducting a Risk Assessment of the mission, without 24 hours notice,

4

and *prior to* the time that Blackwater should have even been operating under the relevant security contracts. Moreover, the men were sent out on the mission without armored vehicles, without three operators in each vehicle, without a rear gunner, without a team of six, and without any heavy weapons. Helvenston was also actually targeted by his Blackwater supervisor (Justin McQuown), who wanted to get rid of him.

12.     Because of Blackwater's wrongful conduct and its efforts to cut corners and save costs, Helvenston and Batalona were killed during their mission for Blackwater. Insurgents were able to literally walk up behind their vehicles, while they were lost and stuck in traffic in Fallujah, and shoot them with small arms fire. Their bodies were then burned, beaten, desecrated, dragged through the streets of Fallujah, and two of them hung up on a bridge over the Euphrates River for all the world and their families to see.

13.     After tying up the civil action for more than a year in a federal appeal over venue, which went all the way to the U.S. Supreme Court with Blackwater losing at every turn, Blackwater ran to the Department of Labor in an effort to obtain a compensation order finding that the incident is completely covered by the Defense Base Act. Blackwater sought a compensation order for the purpose of attempting to use it in the civil action to request that the case be dismissed in favor of the exclusive remedy of workers' compensation under the DBA.

14.     Along the way, Blackwater did everything possible to prevent the Claimants from discovering facts concerning the deaths of Helvenston and Batalona. Blackwater embroiled the civil action in an improper removal and appeal, while having discovery in the matter stayed pending the appeal. In the Department of Labor proceeding, Blackwater was obstreperous in discovery by refusing to appear at depositions and by filing an unsuccessful motion for protective

5

order to avoid responding to discovery.

15.     While at the same time, Blackwater tried many tactics to obtain a compensation order in its favor, without affording the Claimants a meaningful opportunity to be heard, including the novel attempt of demanding a compensation order after the filing of a document entitled "Confession of Judgment."

16.     After Blackwater's attempt at its "Confession of Judgment" failed, it continued its efforts to obtain a compensation order by filing a Motion for Summary Decision (while at the same time still refusing to participate in discovery). In its Motion for Summary Decision, Blackwater correctly acknowledged and conceded that the Claimants had the right to withdraw their claims for benefits.

17.     The Claimants then filed motions to withdraw their claims for benefits under the DBA. Rather unexpectedly, Blackwater opposed the motion, claiming that the Claimants did not have the right to withdraw their claims.

18.     On April 21, 2006, Administrative Law Judge William R. Dorsey denied the Claimants' motions to withdraw their claims.

19.     On April 25 and 26, 2006, Claimants Irby and Batalona, respectively, filed notices of appeal to the Benefits Review Board of the U.S. Department of Labor. Blackwater and CNA also filed an appeal.

20.     On April 25, 2007, the Benefits Review Board ("BRB") issued its ruling denying the Claimants' appeal and denying Blackwater/CNA's appeal, while affirming the decision of ALJ Dorsey. A true and correct copy of the subject decision on review is attached hereto as Exhibit "A" and incorporated herein by reference.

6

21.    On May 14, 2007, Blackwater and CNA filed a petition for review of the BRB's decision with the Second Circuit Court of Appeals.

22.    Since review of BRB decisions concerning issues under the DBA are only appealable in the first instance to the U.S. District Court and not the Circuit Court, on June 11, 2007, Blackwater and CNA also filed the same petition for review of the BRB's decision with this District Court for the Southern District of New York (Case No. 07-CV-5565).

23.    By the instant Petition for Review, Claimants Irby and Batalona similarly appeal the BRB's decision dated April 25, 2007.

## PRAYER FOR RELIEF

24.    Claimants respectfully request that this Court reverse the Benefits Review Board's decision affirming the Administrative Law Judge's order denying Claimants' motions to withdraw claims, and that the matter be remanded to the Office of Administrative Law Judges with instruction to grant the Claimants' motions to withdraw their claims without prejudice; and

25.    For such other and further relief as the Court deems appropriate.

Dated:  New York, New York
        June 22, 2007

                                        CARDILLO & CORBETT

                          By:    _____
                                 JAMES P. RAU (JR7209)
                                 29 Broadway, Suite 1710
                                 New York, NY 10006-3280
                                 (212) 344-0464
                                 (212) 797-1212 [fax]

7

Attorneys for Claimants/Petitioners
PATRICIA IRBY and JUNE BATALONA


**CALLAHAN & BLAINE, APLC**

By: _____

MARC P. MILES (CA # 197741)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
(714) 241-4444
(714) 241-4445 [fax]
Attorneys for Claimants/Petitioners
PATRICIA IRBY and JUNE BATALONA

8

**Exhibit "A"**

**U.S. Department of Labor**

Benefits Review Board
P.O. Box 37601
Washington, D.C. 20013-7601



PUBLISHED

PATRICIA IRBY (on behalf of the minor
children of STEPHEN S. HELVENSTON,
deceased)

   Claimant-Respondent
   Cross-Petitioner

  v.

BLACKWATER SECURITY
CONSULTING, LLC

  and

FIDELITY AND CASUALTY COMPANY
OF NEW YORK/CNA INTERNATIONAL

   Employer/Carrier-
   Petitioners
   Cross-Respondents

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR

   Respondent

JUNE BATALONA
(Widow of WESLEY BATALONA)

   Claimant-Respondent
   Cross-Petitioner

  v.

BLACKWATER SECURITY
CONSULTING, LLC

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

BRB Nos. 06-0655
and 06-0655A

APR 2 5 2007

DATE ISSUED:_____

BRB Nos. 06-0656
and 06-0656A

and                                              )
                                                 )
FIDELITY AND CASUALTY COMPANY                    )
OF NEW YORK/CNA INTERNATIONAL                    )
                                                 )
      Employer/Carrier-                          )
      Petitioners                                )
      Cross-Respondents                          )
                                                 )
DIRECTOR, OFFICE OF WORKERS'                     )
COMPENSATION PROGRAMS, UNITED                    )
STATES DEPARTMENT OF LABOR                       )
                                                 )
      Respondent                                 )    DECISION and ORDER

Appeals of the Orders Denying Claimant's Motion [to] Withdraw Claim of William Dorsey, Administrative Law Judge, United States Department of Labor.

Daniel J. Callahan, Brian J. McCormack, and Marc P. Miles (Callahan & Blaine), Santa Ana, California, for claimants.

Michael P. Socarras (McDermott Will & Emery, LLP), Washington, D.C., and Keith L. Flicker (Flicker, Garelick & Associates, LLP), New York, New York, for employer, and Roger A. Levy (Laughlin, Falbo, Levy & Moresi, LLP), San Francisco, California, for carrier.

Matthew W. Boyle (Jonathan L. Snare, Acting Solicitor of Labor; Allen H. Feldman, Associate Solicitor; Mark A. Reinhalter, Counsel for Longshore), Washington, D.C., for the Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: DOLDER, Chief Administrative Appeals Judge, SMITH and HALL, Administrative Appeals Judges.

PER CURIAM:

Employer/carrier appeals and claimants cross-appeal the Orders Denying Claimant's Motion [to] Withdraw Claim (2006-LDA-00015, 2006-LDA-00017) of Administrative Law Judge William Dorsey rendered on claims filed pursuant to the provisions of the Longshore and Harbor Workers' Compensation Act, as amended, 33

2

U.S.C. §901 *et seq.* (the Act), as extended by the Defense Base Act, 42 U.S.C. §1651 *et seq.* (the DBA). We must affirm the administrative law judge's findings of fact and conclusions of law if they are supported by substantial evidence, are rational, and are in accordance with law. 33 U.S.C. §921(b)(3); *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*, 380 U.S. 359 (1965).

These claims for benefits under the Act arise out of the deaths of Stephen Helvenston and Wesley Batalona in an ambush in Fallujah, Iraq, on March 31, 2004. The decedents worked for Blackwater Security Consulting (employer), which assigned the decedents to its contract with Regency Hotel and Hospital Company to provide security to ESS Support Services Worldwide. ESS had an agreement to provide catering, building, and design support to Kellogg, Brown and Root, which in turn had a contract with the United States Armed Forces.

Claimants filed claims for death benefits under the Act, 33 U.S.C. §909, but also filed suit against employer in Superior Court of Wake County, North Carolina, alleging causes of action for wrongful death and fraud under North Carolina law. Employer attempted to remove the tort action to federal court, alleging that the DBA pre-empts state law claims and because of the unique federal interest. Once in federal district court, employer moved to dismiss the tort claims on the ground that the DBA/Longshore Act provides the only remedy for the decedents' deaths. The federal district court ruled that employer did not meet its burden of establishing federal removal jurisdiction. Therefore, the district court remanded the case to the state court, stating it had no jurisdiction to rule on the motion to dismiss. *Nordan v. Blackwater Security Consulting, LLC,* 382 F.Supp.2d 801 (E.D.N.C. 2005). Employer appealed to the Fourth Circuit, which held that it did not have jurisdiction: "a district court order 'remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise.'" *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 582 (4th Cir. 2006), *cert. denied,* 127 S.Ct. 1381 (2007) (exceptions to this rule do not apply). Thus, the tort claim remains pending in state court. An apparent issue in the tort suit is the allegation that the decedents were "independent contractors," rather than "employees" who are subject to the Act's exclusive jurisdiction. 33 U.S.C. §905(a).

With regard to the death benefits claims filed under the Act, employer accepted liability for the claims and began paying appropriate death benefits. Claimants, however, would not agree to the entry of a compensation order. Employer therefore sought referral of the claims to the Office of Administrative Law Judges for a formal hearing. Employer then filed with the administrative law judge a "Confession to Entry of Order Awarding Benefits," and sought remand of the cases to the district director for the entry of compensation orders pursuant to the withdrawal of controversion regulation, 20 C.F.R. §702.351. Claimants resisted the entry of compensation orders, and the district director therefore declined to issue compensation orders due to the lack of agreement between the

3

parties. *See* 20 C.F.R. §702.316. The administrative law judge subsequently ordered employer to file a motion for summary decision, which it did. Claimants did not respond to the motion, but instead filed motions for withdrawal of their claims pursuant to 20 C.F.R. §702.225. The administrative law judge denied the motions to withdraw, finding they were not for a proper purpose or in claimants' best interests, and he ordered claimants to respond to the motion for summary decision. Employer appeals the refusal to enter compensation orders pursuant to the withdrawal of its controversions.[1] Claimants appeal the denial of their motions to withdraw their claims. The Director has filed a response brief, pursuant to the Board's Order dated January 26, 2007. He avers that the denial of the motions to withdraw was proper at this juncture, as was the administrative law judge's refusal to remand the cases to the district director. The Director contends that the administrative law judge must adjudicate the issue of whether the DBA provides coverage for decedents' deaths.

## WITHDRAWAL OF CONTROVERSION

Employer contends that the administrative law judge lacked jurisdiction to rule on claimants' motion to withdraw because employer withdrew its controversion of the claims before claimants moved to withdraw. Employer avers the administrative law judge did not comply with the applicable regulation, 20 C.F.R. §702.351, governing the consequences of such a withdrawal and that it is entitled to the entry of orders awarding claimants compensation under the Act.

In January 2006, employer filed with the administrative law judge a document in each case entitled "Employer/Carrier Confession to Entry of Order Awarding Benefits." These documents state the decedent's average weekly wage and the entitlement of the respective beneficiaries. It concludes, "there is no further case or controversy to be resolved by trial or otherwise in this proceeding. Consequently, it is respectfully requested that a Compensation Award be entered ordering [claimants'] entitlement to . . . death benefits under the DBA . . ." In response, the administrative law judge ordered employer to file a motion for summary decision. Employer did so, while maintaining that such was unnecessary and that a compensation order must be issued. Claimants did not directly reply to the "Confession" or to the motion for summary decision, but filed various discovery motions and then their motions to withdraw.

Employer also wrote to the district director, seeking a compensation order pursuant to Section 702.351 based on its "Confession." The district director declined to

---

[1] Employer seek compensation orders so that it may obtain reimbursement pursuant to the War Hazards Compensation Act, 42 U.S.C. §1701 *et seq.*, for benefits paid.

issue a compensation order on the ground that he cannot issue such absent the agreement of the parties, which was lacking in these cases.  The administrative law judge also did not act on the motion for summary decision, as, after denying claimants' motions to withdraw, he provided claimants with another opportunity to respond.

Section 702.351 of the regulations states:

> Whenever a party withdraws his controversion of the issues set for a formal hearing, the administrative law judge shall halt the proceedings upon receipt from said party of a signed statement to that effect and forthwith notify the district director who shall then proceed to dispose of the case as provided for in § 702.315.

33 U.S.C. §702.351.    Section 702.315 states that a district director may issue a compensation order only when the parties are in agreement.  20 C.F.R. §702.315; *see Roulst v. Marco Constr. Co.*, 15 BRBS 443 (1983); 20 C.F.R. §702.316.  Employer contends that use of the mandatory term "shall" in Section 702.351 requires the administrative law judge to remand the case to the district director and the issuance of compensation order.[2]    Claimants contend that employer's "Confession" is not a withdrawal of its controversion and that employer is not entitled to the issuance of a compensation order.  The Director contends that the regulations cannot be interpreted in a way that makes it appear as if the parties are in agreement when they clearly are not.

We assume for purposes of this decision that employer's "Confession" is indeed a withdrawal of its controversions, as it requests the issuance of a compensation order based on its admissions to liability.  However, we reject employer's contention that the administrative law judge erred in not issuing a compensation order or remanding the case to the district director for the entry of a compensation order.  Section 702.351 specifically refers to a disposition pursuant to Section 702.315 and this presupposes the agreement of the parties.    Case precedent supports the Director's position that reliance on the regulation at 20 C.F.R. §702.351 is inappropriate when the parties are not in agreement

---

[2] In support of its contention, employer notes that in the case of a co-worker, Michael Teague, who was killed in the same ambush, Administrative Law Judge Mills remanded the case to the district director upon employer's withdrawal of its controversion.  In addition, employer has attached to its reply brief documents relating to subsequent informal conferences held in the *Teague* case.  Claimants have filed a motion to strike the pleadings and documents relating to the *Teague* case.  The administrative law judge's Order of Remand in *Teague* is a matter of public record, and may be relied on as supplemental authority.  However, we grant claimants' motion to strike as it pertains to the documents concerning the informal conferences.

5

concerning the issuance of a compensation order. In *Falcone v. General Dynamics Corp.*, 21 BRBS 145 (1988), the claimant filed a claim for home health care services pursuant to Section 7 of the Act. At the hearing before the administrative law judge, the employer signed a statement withdrawing its controversion of the district director's recommendation regarding the number of hours per day of home health care for which it should be responsible. Employer argued that, pursuant to 20 C.F.R. §702.351, the administrative law judge was obliged to halt the proceedings and remand the case to the district director. Claimant objected to employer's attempt to withdraw its controversion at such a late date and urged the administrative law judge to hear the case so that the issue of claimant's entitlement to home health care services could be resolved. The administrative law judge concluded that since the parties were not in agreement, the hearing should proceed. The Board affirmed this action, stating,

> In calling for a remand to the [district director] where a party withdraws controversion of the issues, Section 702.351 essentially assumes that the parties have decided to voluntarily dispose of the claim in a manner consistent with informal proceedings, thus obviating the need for a formal hearing on the issues. . . . Since the parties here were not in agreement, the administrative law judge properly retained jurisdiction and made findings on the disputed issues.

21 BRBS at 147. *See also Edwards v. Willamette W. Corp.*, 13 BRBS 800-803 (1981) ("Section 702.351 is not applicable . . . because that section governs the situation in which there is no longer any issue to be litigated before the administrative law judge. Here, two parties were contesting liability in the litigation and only one party withdrew its controversion.").

In these cases, it is clear that the parties do not agree that a compensation order should be issued without further proceedings. Therefore, we hold that the administrative law judge did not err in not remanding the case to the district director pursuant to Section 702.351. Absent agreement of the parties, the district director is without authority to issue a compensation order. 20 C.F.R. §§702.315, 702.316. Moreover, in ordering employer to file a motion for summary decision, the administrative law judge ensured that there would be some evidentiary basis for any decision he issued based on that motion.[3] Thus, the administrative law judge retained authority over the cases at the time claimants' filed their motions to withdraw.

---

[3] Employer contends that claimants have not raised any issues requiring adjudication and that therefore a compensation order must be issued. It is clear, however, that claimants oppose the entry of a compensation order, and, on the facts of these cases, this is sufficient to preclude application of Section 702.351. If claimants continue to fail to raise issues requiring adjudication, the administrative law judge may address this in

## MOTIONS TO WITHDRAW

Having established that the administrative law judge properly retained authority over the claims, the next issue concerns claimants' contention that the administrative law judge erred in denying their motions for withdrawal of their claims. The regulation at 20 C.F.R. §702.225 states:

(a)    *Before adjudication of claim.* A claimant (or an individual who is authorized to execute a claim on his behalf) may withdraw his previously filed claim: *Provided,* That:

(1)    He files with the district director with whom the claim was filed a written request stating the reasons for withdrawal;

(2)    The claimant is alive at the time his request for withdrawal is filed;

(3)    The district director approves the request for withdrawal as being for a proper purpose and in the claimant's best interest; and

(4)    The request for withdrawal is filed, on or before the date the OWCP makes a determination on the claim.

* * *

(c)    *Effect of withdrawal of claim.* Where a request for withdrawal of a claim is filed and such request for withdrawal is approved, such withdrawal shall be without prejudice to the filing of another claim, subject to the time limitation provisions of section 13 of the Act and of the regulations in this part.

The Board has held that an administrative law judge is authorized to rule on a motion for withdrawal, notwithstanding the regulation's reference to the district director. *Graham v. Ingalls Shipbuilding/Litton Systems, Inc.,* 9 BRBS 155 (1978); *see also Ingalls Shipbuilding, Inc. v. Director, OWCP [Boone],* 102 F.3d 1385, 31 BRBS 1(CRT) (5th Cir. 1996).

---

disposing of employer's motion for summary decision.    29 C.F.R. §18.40; *Buck v. General Dynamics Corp.,* 37 BRBS 53 (2003).

7

In these cases, the administrative law judge found that the conditions of subsection (a)(3) were not satisfied, as it is not in the best interest of the claimants, especially the Helvenston children, from a financial standpoint, to permit the claims' withdrawals. The administrative law judge found that claimants would be giving up sums certain in exchange for the possibility that they could obtain more in the state court lawsuit. He noted the uncertainties attendant on claimants' claim in this regard: they must avoid the Act's exclusivity clause, prove the extraterritorial reach of state law into Iraq, and prove negligence or intentional wrongdoing. In addition, the administrative law judge noted that the motions to withdraw did not explicitly state what recovery could be expected in state court.

The administrative law judge also addressed whether the proposed withdrawals were for a proper purpose. The administrative law judge found that the motions to withdraw were not filed until employer had paid benefits for more than two years and that prejudice to employer has ensued. The administrative law judge found that, due to the unique circumstances of this case involving employer's reimbursement claim under the War Hazards Compensation Act, the prejudice to employer must be considered in addressing the "proper purpose" element. The administrative law judge noted that it is far from certain that he could enter any kind of judgment, once the claim was withdrawn, that would permit employer to proceed with its reimbursement claim. The administrative law judge found that the motions appear to be a stalling tactic in order to avoid an "adverse" ruling, *i.e.,* the grant of employer's motion for summary decision, resulting in an award of benefits, which could harm claimants' position in the tort suit. The administrative law judge summarized by stating that claimants' motion to withdraw interferes with the efficient operation of the War Hazards Compensation Act and creates a disincentive for employers to pay workers' compensation benefits promptly. The administrative law judge therefore denied the motions to withdraw.

Claimants contend that the Board, in *Stevens v. Matson Terminals, Inc.*, 32 BRBS 198 (1998), and *Langley v. Kellers' Peoria Harbor Fleeting*, 27 BRBS 140 (1993), recognized that the claimant's right to choose to litigate first in another forum is a proper purpose for withdrawing a claim under the Act. Claimants contend these holdings are consistent with Section 13(d) of the Act, 33 U.S.C. §913(d). Claimants further allege that the standard is whether the withdrawal is in "claimant's best interest" and that, therefore, any effect on employer, including the possibility of reimbursement from claimants or pursuant to the War Hazards Compensation Act, is irrelevant. The Director agrees with claimants that the request for withdrawal was for a proper purpose, as claimants are entitled to choose in which forum they will first litigate. The Director contends, however, that the administrative law judge properly found that, at this juncture, the request for withdrawal is not in claimants' best interest. The Director contends that further findings of fact regarding DBA coverage must be made before this factor can be assessed. For the reasons that follow, we agree with claimants that the administrative law

8

judge erred in finding that the motions to withdraw are not for a "proper purpose," but we affirm the finding that withdrawal is not in claimants' best interests.

We first address whether the motions to withdraw are for a "proper purpose." 20 C.F.R. §702.225(a)(3). In *Stevens*, 32 BRBS 197, the claimant sought to withdraw his claim under the Act in order to pursue a state workers' compensation claim. Employer opposed the motion and sought to have the longshore claim adjudicated. The administrative law judge denied the motion to withdraw. The Board held:

> Contrary to the administrative law judge's conclusion, it is proper for claimant to determine the forum in which he will seek benefits. If, prior to adjudication, claimant determines he would rather file a claim under the state law rather than under the Act, he is within his rights to do so, and the administrative law judge erred in concluding that a determination on the merits also must be made in the federal forum. Therefore, we hold that claimant's decision to withdraw his longshore claim because he chooses to pursue a claim under state law is, as a matter of law, a proper purpose for withdrawing a longshore claim.

32 BRBS at 199. The Board remanded the case for the administrative law judge to make a determination as to whether the proposed withdrawal was in the claimant's best interest. In *Langley*, 27 BRBS 140, the administrative law judge granted the claimant's motion to withdraw his claim in order to pursue a state workers' compensation claim, over employer's objection that its right to seek Section 8(f) relief was prejudiced by claimant's action. The Board affirmed, as claimant's right to choose his forum is a "proper purpose" and as the administrative law judge rationally found that the state benefits were potentially greater, thus satisfying the "best interest" requirement. The Board also held that employer was entitled to the adjudication of its Section 8(f) claim, consistent with the Director's position, as its payments under the state act related to employer's Section 44 assessment, pursuant to Section 3(e).[4] *Id.* at 145.

---

[4] Claimants also contend that in its unpublished decision in *Lewis v. SSA Gulf Terminals, Inc.*, BRB No. 03-0523 (April 22, 2004), the Board recognized the legitimacy of the claimant's right to withdraw a claim under the Act in order to pursue a Jones Act case, so as not to jeopardize any remedies due to application of the doctrine of issue preclusion. In *Lewis*, the claimant sought to have his longshore claim held in abeyance pending the outcome of his Jones Act lawsuit. The administrative law judge essentially granted this motion by canceling the hearing and remanding the case to the district director. Employer appealed. The Board affirmed, relying on *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 26 BRBS 44(CRT) (1991), and *Sharp v. Johnson Bros. Corp.*, 973 F.2d 423, 26 BRBS 59(CRT) (5th Cir. 1992), *cert. denied*, 508 U.S. 907 (1993). In *Gizoni*, 502 U.S. at 89, 26 BRBS at 47(CRT), the Supreme Court addressed and rejected

As claimants correctly observe, these cases stand for the proposition that claimants have the right to choose the forum in which they first litigate their cases in order to avoid application of doctrines such as election of remedies and/or issue preclusion. We reject employer's contention that *Stevens* and *Langley* are inapposite because the claimants therein were subject to concurrent federal and state jurisdiction over the workers' compensation claims. That the exclusivity provision of the DBA is at issue does not preclude the claimants from first pursuing remedies in another forum. In this regard, claimants are afforded a degree of protection by Section 13(d) of the Act, which provides,

> Where recovery is denied to any person, *in a suit brought at law* or in admiralty to recover damages in respect of injury or death, on the ground that such person was an employee and that the defendant was an employer within the meaning of this Act and that such employer had secured compensation to such employee under this chapter the limitation of time prescribed in subdivision (a) shall begin to run only from the date of termination of such suit.

Claimants correctly contend that they have brought a suit "at law" in North Carolina state court, and that the time for filing, or re-filing, their claims under the Act is tolled until that suit is denied on the ground that the Act provides their exclusive recovery. *See, e.g., Bath Iron Works Corp. v. Director, OWCP [Acord]*, 125 F.3d 18, 31 BRBS 109(CRT) (1st Cir. 1997); *Vodanovich v. Fishing Vessel Owners Marine Ways, Inc.*, 27 BRBS 286

---

the employer's contention that a worker "arguably covered" under the Longshore Act should first have his status as a "member of a crew" adjudicated under the Longshore Act, and have his Jones Act case stayed. The Court stated that such an interpretation was contrary to Section 13(d) of the Act, 33 U.S.C. §913(d). *See* discussion, *infra.* In *Sharp*, the claimant filed a claim under the Longshore Act and a suit under the Jones Act. He settled his longshore claim pursuant to Section 8(i), 33 U.S.C. §908(i). The district court dismissed the Jones Act claim on the basis of the election of remedies doctrine, and the Fifth Circuit affirmed. The Fifth Circuit stated that although the coverage issue was not expressly litigated in the settlement agreement, the claimant had had the full opportunity to argue for or against coverage before deciding to settle the claim. The court stated that when an administrative law judge issues a compensation order approving a settlement, a "'formal award' should be deemed to have been made under *Gizoni*, and the injured party may no longer bring a Jones Act suit for the same injuries." *Sharp*, 973 F.2d at 426, 26 BRBS at 62(CRT). The court concluded that Congress did not intend that the claimant be able to "pick and choose" his remedy based upon which will provide the larger recovery. Thus, based on this case law, the Board, in *Lewis*, affirmed the granting of the motion for abeyance, which gave the claimant the opportunity to first litigate his Jones Act claim.

10

(1994). Thus, we hold that the claimants' motions to withdraw their claims under the Act in order to seek another remedy first are for a "proper purpose."[5]

We cannot agree with claimants, however, that the administrative law judge erred in finding that withdrawal is not in their best interests. Contrary to claimants' contention, the regulation specifically gives this inquiry to the fact-finder; the administrative law judge or district director must make a finding that the withdrawal is in the claimants' best interests. 20 C.F.R. §702.225(a)(3); see generally Ridley v. Surface Technologies Corp., 32 BRBS 211 (1998); Downs v. Ingalls Shipbuilding, Inc., 30 BRBS 99 (1996). With regard to this element, the administrative law judge found that claimants' recovery in the state forum was uncertain, both on the claims asserted and on a monetary basis. In this respect, the administrative law judge stated that the state court could find that the decedents were independent contractors, which would preclude a compensation remedy, but that one or more of employer's defenses is valid. Under this scenario, the administrative law judge found that claimants would not recover under state law and arguably would not be able to re-file their claims under the Act because Section 13(d) does not apply when the case at law or at admiralty is denied on the merits. 33 U.S.C. §913(d); but see Calloway v. Zigler Shipyards, Inc., 16 BRBS 175 (1984) (reasons for dismissal are irrelevant, as the filing of the action tolls the statute of limitations). The administrative law judge also found that claimants did not provide any meaningful evidence of their likely net recovery in the state forum, as they alleged only that such would be many time greater than a workers' compensation recovery. The administrative law judge found that without better evidence, he cannot find that withdrawal is in claimants' best interest. Rather, he stated that the claimants would be relinquishing their rights to a sum certain in exchange for a speculative recovery.

We affirm the administrative law judge's rational finding that claimants failed to establish that withdrawal of their claims is in their best interests. The administrative law judge rationally stated that a conservative approach should be taken with regard to this issue, as claimants' ability to re-file under Section 13(a) expires one year after the last payment of compensation and under Section 13(d) is predicated on a denial of benefits due to the exclusivity of the DBA. The administrative law judge also reasonably required claimants to demonstrate their likely net recovery in state court so that the sum could be compared to the likely recovery under the DBA. Absent this evidence, the administrative

---

[5] We reject employer's contention that the claims cannot be withdrawn because the United States Constitution gives federal tribunals exclusive jurisdiction over military matters and state courts therefore cannot impose tort liability on contractors employed in a foreign battle zone. This argument was rejected by the district court in denying removal jurisdiction. Nordan, 382 F.Supp.2d at 813-814.

law judge did not err in denying claimants' motions to withdraw and we affirm his finding.[6]

As we affirm the administrative law judge's denial of the motions for withdrawal of the claims as not in claimants' best interest, we need not address in detail either claimants' contention that the administrative law judge erred in accounting for any prejudice to employer that might ensue if withdrawal were permitted, or employer's contention that claimants' counsel has a conflict of interest in advising them to withdraw. For purposes of the former, it is sufficient to note that the regulation requires an analysis of *claimant's* best interests and that, in a black lung case, the Board agreed with the Director that consideration of prejudice to employer is not required in assessing the propriety of a motion to withdraw. *See Bailey v. Dominion Coal Corp.*, 23 BRBS 1-87 (2005); 20 C.F.R. §§702.225, 725.306. With respect to the latter contention, the administrative law judge rationally found that there is no conflict of interest, in that the attorneys' clients in the state court suit are actually the claimants, despite their representation of the nominal plaintiff who is the representative of the decedents' estates. The administrative law judge also properly found that the interests of the attorneys and the claimants are aligned. *See generally Smiley v. Director, OWCP*, 984 F.2d 278 (9th Cir. 1993).

We remand the cases to the administrative law judge, who has pending before him employer's motion for summary decision. On remand, the administrative law judge should adjudicate the claims consistent with case precedent and regulations concerning the grant or denial of motions for summary decision. *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55 (2[d] Cir. 2002); *Brockington v. Certified Electric, Inc.*, 903 F.2d 1523 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991); *Buck v. General Dynamics Corp.*, 37 BRBS 53 (2003); *Dunn v. Lockheed Martin Corp.*, 33 BRBS 204 (1999); 29 C.F.R. §18.40 *et seq.*

---

[6] We reject the Director's contention that the case must be remanded for the administrative law judge to adjudicate the issue of whether decedents' work was covered under the DBA, and to reconsider the motions to withdraw in light of his findings. While claimants are free to file new motions to withdraw, the administrative law judge was not required to go beyond the existing documentation in order to make findings regarding the propriety of claimants' motions.

Accordingly, we affirm the administrative law judge's refusal to enter a compensation order pursuant to employer's withdrawal of its controversion. In addition, the administrative law judge did not err in not remanding the case to the district director for the entry of compensation orders. We affirm the administrative law judge's Orders denying claimants' motions to withdraw. The cases are remanded to the administrative law judge for adjudication consistent with this decision.

SO ORDERED.

NANCY S. DOLDER, Chief
Administrative Appeals Judge

ROY P. SMITH
Administrative Appeals Judge

BETTY JEAN HALL
Administrative Appeals Judge